FILED STAMPED: JULY 16, 2008
08CV4040
JUDGE PALLMEYER
MAG. JUDGE DENLOW
J. N.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | New Case No. 08_____ |
| | ) | |
| **RESOURCE TECHNOLOGY CORPORATION,** | ) ) | |
| | ) | Emergency hearing: Thursday, |
| Debtor. | ) | July 17, 2008 at 9:00 a.m. |

### EMERGENCY MOTION FOR LIMITED STAY PENDING APPEAL OF BANKRUPTCY COURT ORDER

Chiplease, Inc. ("Chiplease"), by its undersigned attorneys, moves the District Court on an emergency basis, pursuant to Local Rule 77.2 and Fed. R. Bankr. P. 8005, for a stay of the Bankruptcy Court's June 25, 2008 order in *In re Resource Technology Corporation*, bankruptcy case no. 99-35434. In support of its motion, Chiplease states:

**Introduction**

This is a motion for stay of a Bankruptcy Court order requiring compliance on July 17, 2008. As demonstrated below, Chiplease will suffer irreparable harm if it must comply with the order absent a stay while appealing it before the District Court. Chiplease is likely to succeed on the merits, as argued more fully below, because the Bankruptcy Court altered the terms of the parties' settlement agreement by, *inter alia*, requiring Chiplease to put funds that are not property of the bankruptcy estate into an account at the Chapter 7 trustee's law firm, thereby creating a conflict of interest.

**Factual Background**

1. On November 15, 1999, certain creditors of RTC filed an involuntary petition under Chapter 7 of the Bankruptcy Code. On or about January 18, 2000, RTC consented to entry of an order for relief converting its case to Chapter 11 of the Bankruptcy Code.

2. RTC's case was converted to Chapter 11 as of February 1, 2000. RTC remained in possession of its assets and operated its business as a debtor-in-possession until August 26, 2003. Jay A. Steinberg serves as Chapter 7 trustee in the case (the "Trustee").

3. On February 17, 2006, the Trustee filed a motion for authority to enter into a settlement agreement with Leon Greenblatt, Banco Panamericano, Chiplease and Scattered Corporation to compromise all disputes between the settling parties and to convey RTC estate assets, including certain executory contracts and leases, to Scattered and/or Chiplease or their designee (the "Settlement Agreement"). (Docket No. 3091)

4. On March 16, 2006, the Bankruptcy Court entered an order granting the Trustee's motion and approving the Settlement Agreement. (Docket No. 3170)

5. The Settlement Agreement provides, in pertinent part:

> Chiplease shall pay all unpaid Chapter 7 operating expenses above $150,000 and any expenses incurred while the Estate continues to operate the Debtor's business ("Expenses"). The Estate shall pay the first $150,000 of these expenses. On or before the Closing Date, Chiplease shall deliver to its counsel, Dykema Gossett PLLC the sum of $500,000.00 <u>to be used to pay the Expenses</u> ("Adequate Security"). After the Estate has paid a total of $150,000 in Chapter 7 Expenses, Chiplease will be requested to pay all additional Chapter 7 operating expenses. The Chapter 7 Trustee shall advise Chiplease in writing of Chiplease's obligation to pay one or more Expenses (the "Expense Request"). Chiplease shall have seven (7) days from receipt of the Expense Request to either pay the Estate sufficient funds to fully satisfy the Expense Request, or to dispute the payment of the Requested Expenses in writing ("Expense Dispute"). If Chiplease fails to make a timely Expense Dispute, the Expense Request will be deemed allowed and Chiplease will be required to pay it. If an Expense Dispute is timely made, the Estate shall have ten (10) days from the receipt of the Expense Dispute to seek to have the Expense Request allowed or disallowed by the Court (the "Expense Motion"). In the event that the Estate does not file an Expense Motion within the ten (10) day period, Chiplease shall be granted standing for the limited purpose of seeking to have the Expense Request disallowed.

*See* Settlement Agreement at § 11(i) (emphasis added). (Exhibit to Docket No. 3170)

2

6. On or about April 17, 2008, American Grading Company ("AGC") and Congress Development Company filed a motion (the "Motion") seeking to compel Chiplease to post $5 million as security for Chapter 7 operating expenses. In the Motion, AGC alleged that Chiplease did not comply with the Settlement Agreement by not depositing $500,000 with Dykema Gossett. (Docket No. 4241)

7. On June 3, 2008, Chiplease filed a response in opposition to the Motion. In its response, Chiplease stated, among other things, that (i) the Settlement Agreement did not require a $5 million deposit and the order approving it has *res judicata* effect; and (ii) Chiplease in fact had satisfied Chapter 7 operating expenses in excess of $500,000 by causing Dykema Gossett to write checks to pay Chapter 7 operating expenses following approval of the Settlement Agreement. In fact, the response demonstrates that after the $500,000 deposited into the Dykema Gossett account had been exhausted, Chiplease deposited additional funds to pay for additional Chapter 7 operating expenses. Chiplease attached to its response numerous exhibits demonstrating the Chapter 7 operating expenses it had already paid. (Docket No. 4286)

8. On June 17, 2008, the Bankruptcy Court ruled on the Motion by directing Chiplease to pay an additional $500,000.00 into a new account at the Arnstein & Lehr law firm (the Trustee's counsel). The Bankruptcy Court also ordered Chiplease to pay interest on the $500,000 but did not specify a rate of interest; the Bankruptcy Court suggested that the parties determine the rate of interest that would have been earned on the funds at Dykema Gossett.

9. On June 24, 2008, Chiplease filed the affidavit of John Connolly, which supported the statements in Chiplease's response to the Motion, explained Chiplease's payments of Chapter 7 operating expenses and attached more exhibits identifying Chapter 7 operating expenses Chiplease had paid. (Docket No. 4316)

10. The parties were unable to agree on a form of order—among other reasons, because Chiplease objected to the payment of interest on the $500,000. On June 25, 2008, the Bankruptcy Court ruled that Chiplease must pay $500,000.00 into Arnstein & Lehr, plus compound interest in the amount of $47,367.47, by July 17, 2008 (the "Order"). (Docket No. 4318)

11. On July 1, 2008, Chiplease filed a notice of appeal of the Order. (Docket No. 4322) On July 11, 2008, Chiplease filed its statement of issues and designation of the items for the record on appeal (Docket No. 4329), but the record is not due to be transmitted to the District Court until August 11, 2008. Accordingly, no District Court Judge or new case number has been assigned to the appeal yet.

12. On July 16, 2008, the Bankruptcy Court denied Chiplease's motion (Docket No. 4328) for a stay of the Order pending appeal of the Order.

**Legal Argument**

13. Fed. R. Bankr. P. 8005 provides, in pertinent part:

> A motion for a stay of a judgment, order, or decree of a bankruptcy court, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be made in the first instance in the bankruptcy court. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy court may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest….

14. In considering whether to grant a stay pending appeal under Rule 8005, courts consider four factors, whether: (a) the appellant is likely to succeed on the merits of the appeal; (b) the appellant will suffer irreparable injury absent a stay; (c) a stay would substantially harm other parties in the litigation; and (d) a stay is in the public interest. *See e.g., Village of Rosemont v. Jaffe (In re Emerald Casino, Inc.)*, 334 B.R. 378, 391 (N.D. Ill. 2005).

4

15. First, Chiplease need not show that it is more likely than not to succeed on appeal. Instead, the standard applied is whether the appellant has a "substantial case on the merits." This district has interpreted that factor as follows:

> The first factor, "likelihood of success," presents the most conceptual difficulty. Obviously, we think an appeal will probably fail; we have reviewed our opinion and stand by it. Had we thought an appeal would be successful, we would not have ruled as we did in the first place. But a party seeking a stay need not show that it is more than 50% likely to succeed on appeal; otherwise, no district court would ever grant a stay. It is enough that the City have a substantial case on the merits.

*Thomas v. City of Evanston*, 636 F.Supp. 587, 590 (N.D. Ill. 1986).

16. Chiplease has a substantial case on the merits of one or more issues it has appealed, namely that: (i) Chiplease already has paid more than $500,000.00 in Chapter 7 operating expenses, which is consistent with the letter and spirit of the Settlement Agreement; (ii) the Settlement Agreement did not provide for interest--let alone compound interest--on the $500,000, nor was there any evidence that the Dykema Gossett account was interest-bearing; (iii) the Settlement Agreement did not provide for a deposit at the Arnstein & Lehr law firm; and (iv) the Bankruptcy Court ignored Chiplease's evidence and did not conduct an evidentiary hearing on issues of fact raised in Chiplease's response. Indeed, if the Trustee had insisted on including in the Settlement Agreement, the requirements described in "ii" and "iii" above, Chiplease would not have entered into such a settlement with the Trustee. As Chiplease argued in its response to the Motion, it is too late for AGC or the Bankruptcy Court to add new terms to the Settlement Agreement contrary to the agreement's plain language.

17. In particular, argument "i" above is well-supported by the exhibits to both Chiplease's response and John Connolly's affidavit. Chiplease caused Dykema Gossett to write checks to pay Chapter 7 operating expenses following approval of the Settlement Agreement in

excess of $500,000 and wrote additional checks to pay Chapter 7 operating expenses in excess of the $500,000. (*See, e.g.,* "Exhibit B" to Connolly's affidavit, which contains copies of numerous checks written on the Dykema account for, *e.g.*, RTC payroll.) The Bankruptcy Court did not appear to consider this evidence at the hearings on the Motion and did not address issues of fact at the hearings.

18.   Moreover, in ordering $500,000 plus compound interest to be deposited at Arnstein & Lehr, the Bankruptcy Court seemed to find that the monies are now property of the estate, which finding Chiplease strongly disputes. Since the funds are not property of the estate, the Bankruptcy Court's order requiring the funds be held in the Trustee's counsel's account, creates an inherent conflict of interest where none previously existed.

19.   Second, Chiplease will suffer irreparable injury absent a stay because Chiplease is required to put $547,367.47 into an account at Arnstein & Lehr by July 17, 2008 for payment of Chapter 7 operating expenses *even though* it already has paid more than $500,000 in Chapter 7 operating expenses. This is a significant financial burden for Chiplease and will cause it to incur debt and/or liquidate assets when it was not prepared to do so.[1] Furthermore, Chiplease was not prepared to deposit compound interest over two years insofar as the Settlement Agreement as negotiated and approved did not call for that.

20.   Third, the granting of a stay would not harm other parties to this matter because (i) Chiplease already has paid a substantial amount and number of Chapter 7 operating expenses; and (ii) numerous Chapter 7 administrative claims--including AGC's--are pending <u>but have not yet been allowed</u>, and thus, are not entitled to payment. Accordingly, these claimants are not prejudiced by a stay of the Order because they are not yet entitled to relief.

---

[1]   Also because of this economic hardship, Chiplease submits that waiver of a bond, as sometimes required in connection with a stay under Rule 8005, is appropriate.

21.     Finally, a stay is in the public interest because our legal system does not favor compelling entities to take actions contrary to settlements they negotiated; that would deter people from settling out of court.  Moreover, staying the Order will not impact any public interest or public policy.

**WHEREFORE**, Chiplease, Inc. prays that the District Court enter an order staying the Bankruptcy Court's June 25, 2008 order requiring Chiplease to place $547,367.47 into a new account with Arnstein & Lehr, and for such other relief as the District Court deems just and proper.

                                **CHIPLEASE, INC.**

                                By:    /s/ Colleen E. McManus
                                       One of its attorneys

Louis D. Bernstein, ARDC No. 6192379
Colleen E. McManus, ARDC No. 06243473
**Much Shelist Denenberg**
       **Ament & Rubenstein, P.C.**
191 North Wacker Drive, Suite 1800
Chicago, IL  60606
Telephone:  312-521-2000