**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In Re:** | ) | **Case No. 08-cv-4040** |
| | ) | **Hon. Matthew F. Kennelly** |
| **RESOURCE TECHNOLOGY** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Debtor.** | ) | |

**CHIPLEASE, INC.'S RESPONSE IN OPPOSITION TO**
**TRUSTEE'S ALLEGATIONS OF CONTEMPT**

Chiplease, Inc. ("Chiplease"), by its undersigned attorneys, submits this response in opposition to allegations of contempt made against it in this case, and states:

**Introductory Statement**

This is <u>not</u> a situation of willful disregard of a court order or a shell game by an entity with deep pockets. Since the entry of the order approving the March 16, 2006 settlement agreement between the Trustee and Chiplease, Banco Panamericano, Leon Greenblatt and Scattered Corporation, Chiplease has complied with the terms of that order and settlement and also has paid over $1 million of Chapter 7 bankruptcy operating expenses from. As described below, the Chapter 7 operating expenses that Chiplease was slated to pay under the settlement have skyrocketed beyond the aggregate estimated by the settling parties. Chiplease has limited cashflow and has been diligent and forthright in its attempts to gain more time to comply with the Court's order.

**Factual Background**

On November 15, 1999, certain creditors of RTC filed an involuntary petition under Chapter 7 of the Bankruptcy Code. On or about January 18, 2000, RTC consented to entry of an order for relief converting its case to Chapter 11 of the Bankruptcy Code. RTC's case was

converted to Chapter 11 as of February 1, 2000. RTC remained in possession of its assets and operated its business as a debtor-in-possession until August 26, 2003. Jay A. Steinberg serves as Chapter 7 trustee in the case (the "Trustee").

On February 17, 2006, the Trustee filed a motion for authority to enter into a settlement agreement with Leon Greenblatt, Banco Panamericano, Chiplease and Scattered Corporation to compromise all disputes between the settling parties and to convey RTC estate assets, including certain executory contracts and leases, to Scattered and/or Chiplease or their designee (the "Settlement Agreement"). On March 16, 2006, the Bankruptcy Court entered an order granting the Trustee's motion and approving the Settlement Agreement.[1]

The Settlement Agreement provides four primary obligations of Chiplease, as follows: (i) pay RTC's estate $275,000.00; (ii) execute the requisite releases; (iii) execute an agreed order authorizing disbursement of Section 506(c) funds to the estate; and (iv) deliver to its counsel (then Dykema Gossett) $500,000.00 "to be used to pay" the Chapter 7 operating expenses above the first $150,000.00 to the estate. (Settlement Agreement at ¶11.) Chiplease performed each of these obligations, and it is undisputed that Chiplease performed the first three. As for the fourth, Chiplease deposited in excess of $500,000 into the Dykema account, which was used to pay Chapter 7 operating expenses pursuant to the Settlement Agreement.

With respect to the last obligation, the settling parties contemplated as follows:

> Whereas the Estate lacks sufficient resources to assume any Executory Contracts or to satisfy the costs of administration of the Chapter 7 Estate that are currently estimated to be approximately $250,000 to $400,000 based upon the information and analysis of the Chapter 7 Trustee and John Connolly.

(*See* Settlement Agreement at p. 4.)

---

[1]     Another copy of the settlement order and the Settlement Agreement is attached as Exhibit A.

The fact that Chiplease paid three times the estimated amount of Chapter 7 operating expenses indicates that it is abiding with the spirit and terms of the Settlement Agreement, the settlement order and the Order.

On or about April 17, 2008, American Grading Company and Congress Development Company (together, the "Claimants") filed a motion in the Bankruptcy Court seeking to compel Chiplease to post $5 million as security for Chapter 7 operating expenses. The Claimants alleged that Chiplease did not comply with the Settlement Agreement by not depositing $500,000 with Dykema Gossett. On June 3, 2008, Chiplease filed a response in opposition to the Claimants' motion. In its response, Chiplease stated, among other things, that (i) the Settlement Agreement did not require a $5 million deposit and the order approving it has *res judicata* effect; and (ii) Chiplease satisfied Chapter 7 operating expenses in excess of $1,000,000 by causing Dykema Gossett to write checks to pay Chapter 7 operating expenses following approval of the Settlement Agreement.

In fact, RTC's estate did not have sufficient funds with which to pay operating expenses. Examples of the Chapter 7 operating expenses Chiplease paid are invoices for meteorological monitoring and other services at the landfills, insurance premiums, employee payroll, employee health and dental insurance and franchise taxes. On the first occasion of disbursement from the Dkyema account, Chiplease gave notice to the Trustee that it was disbursing funds from that account, to which the Trustee consented. (This further supports Chiplease's contention that the parties to the Settlement Agreement understood the $500,000 was not to be used as a security deposit but, rather, to pay ongoing Chapter 7 operating expenses.) After the $500,000 and more had been deposited into the Dykema Gossett account, Chiplease paid additional Chapter 7 operating expenses in accordance with the terms of the Settlement Agreement.

3

On June 17, 2008, the Bankruptcy Court directed Chiplease to pay $500,000.00 into a new account at Arnstein & Lehr (the Trustee's counsel). On June 24, 2008, Chiplease filed the affidavit of John Connolly, which supports the statements in Chiplease's response to the Motion, explained Chiplease's payments of Chapter 7 operating expenses and attached more exhibits identifying Chapter 7 operating expenses Chiplease had paid. On June 25, 2008, the Bankruptcy Court ruled that Chiplease must pay $500,000.00 into Arnstein & Lehr, plus compound interest in the amount of $47,367.47, by July 17, 2008.

On July 1, 2008, Chiplease filed a notice of appeal of the Bankruptcy Court's order. On July 16, 2008, the Bankruptcy Court denied Chiplease's motion for a stay pending appeal of its June 25, 2008 order. Later on July 16, 2008, Chiplease filed before this Court an emergency motion for stay pending appeal. Among other arguments, Chiplease argued that it is likely to succeed on the merits but would suffer irreparable harm in the absence of a stay insofar as it would have to attempt to liquidate assets on an emergency basis in order to deposit $500,000 plus interest by July 17, 2008.

By order dated July 17, 2008 (the "Order"), this Court required Chiplease to deposit $500,000.00 into an interest-bearing account at Much Shelist on or before July 24, 2008. On or about July 21, 2008, Chiplease filed an emergency motion to reconsider or extend the time for compliance with the Order, arguing that it could not perform timely under the Order and asking for a three-month extension of the compliance deadline. On July 24, 2008, this Court denied that motion.

On or about July 29, 2008, the Trustee filed a motion for rule to show cause why Chiplease should not be found in contempt of Court for its noncompliance with the Order. On

August 5, 2008, this Court issued a rule to show cause and provided Chiplease with 14 days to

respond as to why it should not be found in contempt.

## Legal Argument

Appropriate Standard

A court may hold a party in civil contempt only when (a) the order the party allegedly

failed to comply with is clear and unambiguous, (b) the proof of non-compliance is clear and

convincing, and (c) the party has not diligently attempted in a reasonable manner to comply.

*New York State Natl. Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989).  A party

should not be found in contempt where he made a genuine, good faith effort to comply with a

court order but was unable to do so.  *See e.g., TMT North America, Inc. v. The Magic Touch*

*GMBH*, 57 F.Supp.2d 586 (N.D.Ill. 1999) (finding trademark infringement defendant was

reasonably diligent in attempting to comply with order requiring it to label product to

disassociate it from claimant's mark; not finding contempt even though not every affected

product was labeled).  This Court has placed importance on the alleged contemnor's intent.

*Bobak Sausage Co. v. Bobak Orland Park, Inc.*, 2007 WL 4302964 * 2 (N.D. Ill.).

A.      Chiplease at all times has acted in good faith.

Chiplease does not challenge the Order as ambiguous.  But Chiplease emphasizes that

compliance with only the Order is at issue here.  *See In re Dyer*, 322 F.3d 1178, 1191 (9th Cir.

2003) (explaining that contempt can be found only where violation of a specific, definite court

order).  The Bankruptcy Court' June 25, 2008 order is not relevant to the contempt allegations;

indeed, that order is the subject of the instant appeal.  In several respects, Chiplease has

manifested good faith and an intent not to disregard the Order.

5

First, as described above, Chiplease substantially complied with its obligations under the Settlement Agreement. Indeed, Chiplease paid more than $1 million in Chapter 7 operating expenses since the closing on the Settlement Agreement with the Chapter 7 trustee—more than twice the $250,000-$400,000 in expenses initially contemplated by the parties to the Settlement Agreement. (As of now, over $20 million in Chapter 7 administrative claims have been asserted. The landscape has shifted dramatically since the parties' expectations upon settling in 2006.) Chiplease's actions overwhelmingly demonstrate good faith in performing its obligations under the Settlement Agreement.

Second, Chiplease moved for a stay and, after the Order was entered, for reconsideration or an extension of the time for compliance. At all times, Chiplease was candid with this Court about its inability to timely comply with the Order and its desire for more time in which to comply. Chiplease never disregarded the Order or behaved contrary to its requirements.

B.    Chiplease simply cannot pay.

Chiplease's defense is that it has neither the sufficient funds nor the monthly cashflow to comply with the Order. Its bank account statements for the months of June and July 2008, the relevant time periods for purposes of the contempt allegations, do not indicate anywhere close to $500,000 sufficient to comply with the Order. (Chiplease bank account statements dated 6-30-08 and 7-31-08 are attached as Exhibit A.)

Moreover, Chiplease serves as a cash management system for other entities and, as such, regularly deposits, holds and transfers funds belonging to entities other than Chiplease, which explain the transfers in and out of its account. (*See* affidavit of Leon Greenblatt, attached as Exhibit B.) Chiplease's own limited assets are largely illiquid and have no ready market. *Id.*

As the bank statements indicate, Chiplease does not regularly maintain anywhere near $500,000 in its account. This fact is consistent with Chiplease's position throughout these proceedings--beginning with the notice of appeal and continuing with the motion for stay--that the $500,000 was not a security deposit but instead was "to be used to pay Chapter 7 operating expenses." (Settlement Agreement at ¶ 11). Again, following execution of the Settlement Agreement, Chiplease over time used its own funds to pay more than $1 million in Chapter 7 operating expenses.

Additionally, as the Chapter 7 trustee and the Claimants know, by virtue of a trial before the Bankruptcy Court in February 2008 (in another *Resource Technology* appeal currently before this Court under case no. 08cv2425), that Chiplease's monthly cashflow is severely limited, as follows:

> Q:   Okay.   Approximately how much each month does Chiplease receive from its loans and leases?
> A:   $150,000.
> Q:   Okay.   And after expenses, what's the net amount available to Chiplease to lend or what's available after expenses?
> A:   That was after expenses.
> Q:   Oh, okay, $150,000 a month?
> A:   Yes.

(An excerpt of the trial transcript was attached to Chiplease's motion to reconsider or extend the Order, "Exhibit A" at p. 14, lines 14-22.) Accordingly, based on that monthly cashflow rate, Chiplease previously requested that it be given until September 15, 2008 to comply with the Order. Chiplease sought not to disregard the Order but to extend it so that it could comply.

Conclusion

Finally, although Chiplease does not wish to minimize the import of the Order, it notes that no party has been harmed by its inability to comply with the Order. The Trustee cannot

point to any diminution of RTC's bankruptcy estate, and the Claimants do not yet have allowed

Chapter 7 administrative claims in RTC's case, so they are not yet entitled to payment.

In sum, Chiplease submits that, at a hearing on the issue of contempt, the Trustee will not

establish by clear and convincing evidence that Chiplease is in contempt of Court.


**CHIPLEASE, INC.**

By:    /s/ Colleen E. McManus
       One of its attorneys

Louis D. Bernstein, ARDC No. 6192379
Colleen E. McManus, ARDC No. 06243473
**Much Shelist Denenberg**
       **Ament & Rubenstein, P.C.**
191 North Wacker Drive, Suite 1800
Chicago, IL  60606
Telephone:  312-521-2000

789464_3

# EXHIBIT A

# mb financial
## bank N.A.
www.mbfinancial.com

STATEMENT

Page 1
Statement Date  7-31-08
Account #  5040004311
MAIL STATEMENT
Image Statement

39

MDG2005 00005831 2 AV 0.449

|.||..||....||..||....||..|...|...||||....||.|.|....||.|.|.|

**CHIPLEASE INC**
**330 S WELLS ST SUITE 718**
**CHICAGO IL 60606-7103**

005831

Traveling outside the U.S.?
Remember to call MB and let us know.
For your protection, we monitor debit card activity.
By calling to let us know
that you plan to use your card
for purchases outside the U.S.,
we can ensure your card works properly and
make your trip more enjoyable!

504000 431 1        REGULAR DEMAND ACCOUNT

| | | |
|---|---|---|
| Previous Balance | 6-30-08 | 81,811.38 |
| +Deposits/Credits | 8 | 149,444.28 |
| -Checks/Debits | | 231,000.95 |
| -Service Charge | | .00 |
| +Interest Paid | | .00 |
| Current Balance | | 254.71 |

```
* - - - - - - - - - -CHECKS PAID- - - - - - - - - - - - - - - *
```

| No. | Date | Amount | No. | Date | Amount |
|---|---|---|---|---|---|
| 1361 | 7-15 | 25.00 | 3366 | 7-09 | 1500.00 |
| 1362 | 7-09 | 25.00 | 3367 | 7-10 | 1550.00 |
| 1363 | 7-17 | 30.00 | 3368 | 7-09 | 7050.00 |
| 1364 | 7-14 | 25.00 | 3369 | 7-10 | 200.00 |
| 1365 | 7-10 | 30.00 | 3370 | 7-15 | 65000.00 |
| 1369* | 7-23 | 5883.20 | 3371 | 7-18 | 1317.93 |
| 3348* | 7-10 | 68200.00 | 3372 | 7-17 | 1500.00 |
| 3349 | 7-08 | 1740.21 | 3373 | 7-21 | 882.86 |
| 3350 | 7-01 | 2000.00 | 3375* | 7-17 | 75.00 |
| 3352* | 7-07 | 5500.00 | 3376 | 7-17 | 1848.70 |
| 3355* | 7-01 | 15500.00 | 3377 | 7-17 | 3400.00 |
| 3356 | 7-01 | 7000.00 | 3380* | 7-18 | 95.29 |
| 3357 | 7-03 | 6500.00 | 3381 | 7-24 | 1000.00 |
| 3358 | 7-08 | 300.00 | 4003* | 7-15 | 1069.23 |
| 3359 | 7-09 | 2996.51 | 4004 | 7-15 | 1069.23 |
| 3360 | 7-17 | 2045.61 | 4005 | 7-16 | 1069.23 |
| 3361 | 7-18 | 3000.00 | 7529* | 7-17 | 150.00 |
| 3362 | 7-14 | 129.39 | 7530 | 7-16 | 180.00 |
| 3363 | 7-08 | 1000.00 | 7531 | 7-16 | 284.06 |
| 3365* | 7-08 | 1500.00 | | | |

```
* - - - - - - - - - -DESCRIPTIVE TRANSACTIONS- - - - - - - - - - *
```

| Date | Tracer | Description | Amount |
|---|---|---|---|
| 7-01 | 63 | Paid UCF DR sys-gen | 32.95- |
| | | UNCOLLECTED FUNDS | |
| 7-02 | 987 | TF TO 7639 PER CUST REQUEST | 18000.00- |
| | | EWELCH | |
| 7-02 | 25 | Paid UCF DR sys-gen | 65.90- |
| | | UNCOLLECTED FUNDS | |
| 7-03 | 25 | Paid UCF DR sys-gen | 32.95- |
| | | UNCOLLECTED FUNDS | |
| 7-07 | 1111111 | CUSTOMER DEPOSIT | 7941.50 |
| 7-11 | 987 | TF5040004834PERMIKEMAY/AMINA | 60000.00 |
| 7-11 | 23 | Pd NSF/OD dr sys-gen | 65.90- |
| | | INSUFFICIENT | |
| 7-14 | 987 | TR FR 5040004834 CLANE | 5500.00 |
| 7-16 | 987 | TR FR 5040004834 CLANE/MIKE | 60000.00 |
| 7-16 | 22 | Pd NSF/OD dr sys-gen | 131.80- |

NOTICE SEE REVERSE SIDE FOR IMPORTANT INFORMATION



NNN    DI   011571 P

**mb financial**
**bank** N.A.
www.mbfinancial.com

CHIPLEASE INC

|  |  |  |  |
|---|---|---|---|
|  |  | INSUFFICIENT |  |
| 7-17 | 1111111 | CUSTOMER DEPOSIT | 7059.57 |
| 7-18 | 987 | TF5040004834PER MICHAEL/AMINA | 2000.00 |
| 7-18 | 1111111 | CUSTOMER DEPOSIT | 1343.21 |
| 7-23 | 1111111 | CUSTOMER DEPOSIT | 5600.00 |

```
*- - - - - - - - - - -DAILY BALANCE SUMMARY- - - - - - - - - - -*
```

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 6-30 | 81811.38 | 7-01 | 57278.43 | 7-02 | 39212.53 |
| 7-03 | 32679.58 | 7-07 | 35121.08 | 7-08 | 30580.87 |
| 7-09 | 19009.36 | 7-10 | 50970.64- | 7-11 | 8963.46 |
| 7-14 | 14309.07 | 7-15 | 52854.39- | 7-16 | 5480.52 |
| 7-17 | 3490.78 | 7-18 | 2420.77 | 7-21 | 1537.91 |
| 7-23 | 1254.71 | 7-24 | 254 |  |  |



MB. MY BANK.
1.888.I BANK MB (1.888.422.6562)

# mb financial
bank N.A.
www.mbfinancial.com

Statement Date  6-30-08
Account #  5040004311
MAIL STATEMENT
Image Statement

34

MDG2005 00005836 2 AV 0.449

**CHIPLEASE INC**
**330 S WELLS ST SUITE 718**
**CHICAGO IL 60606-7103**

005836

As a customer of MB, you can now receive a discount on
AAA membership and a reduced enrollment fee.

Exclusive AAA member benefits include 24-hour roadside assistance,
discounts at thousands of retailers nationwide,
access to AAA Travel and more!

To learn more about this new benefit for MB customers
visit www.mbfinancial.com

504000 431 1        REGULAR DEMAND ACCOUNT

| | | |
|---|---|---:|
| Previous Balance | 5-31-08 | 458.78- |
| +Deposits/Credits | 16 | 187,149.09 |
| -Checks/Debits | | 104,874.43 |
| -Service Charge | | 4.50 |
| +Interest Paid | | .00 |
| Current Balance | | 81,811.38 |

```
* - - - - - - - - - - -CHECKS PAID- - - - - - - - - - - - -*
```

| No. | Date | Amount | No. | Date | Amount |
|---|---|---:|---|---|---:|
| 1355 | 6-05 | 40.00 | 3335 | 6-12 | 441.43 |
| 1356 | 6-09 | 28.00 | 3336 | 6-23 | 2211.47 |
| 1357 | 6-09 | 24.00 | 3337 | 6-13 | 5000.00 |
| 1358 | 6-02 | 3200.00 | 3338 | 6-06 | 2250.00 |
| 1359 | 6-02 | 1500.00 | 3340* | 6-20 | 105.00 |
| 1366* | 6-30 | 4000.00 | 3341 | 6-18 | 80.00 |
| 3315* | 6-05 | 1600.00 | 3342 | 6-18 | 4000.00 |
| 3325* | 6-04 | 800.00 | 3343 | 6-20 | 14577.36 |
| 3326 | 6-03 | 5900.00 | 3344 | 6-19 | 14500.00 |
| 3327 | 6-04 | 2600.00 | 3345 | 6-25 | 100.00 |
| 3328 | 6-04 | 7500.00 | 3346 | 6-25 | 1000.00 |
| 3329 | 6-09 | 2118.96 | 3347 | 6-30 | 5100.00 |
| 3330 | 6-11 | 5332.24 | 3353* | 6-12 | 6000.00 |
| 3331 | 6-11 | 500.00 | 3354 | 6-27 | 1000.00 |
| 3332 | 6-12 | 200.00 | 4000* | 6-19 | 1069.23 |
| 3333 | 6-09 | 42.23 | 4001 | 6-17 | 1069.23 |
| 3334 | 6-13 | 1290.00 | 4002 | 6-19 | 1069.23 |

```
* - - - - - - - - -DESCRIPTIVE TRANSACTIONS- - - - - - - - - - - -*
```

| Date | Tracer | Description | Amount |
|---|---|---|---:|
| 6-02 | 1111111 | CUSTOMER DEPOSIT | 16600.00 |
| 6-02 | 34 | Pd NSF/OD dr sys-gen INSUFFICIENT | 32.95- |
| 6-03 | 1111111 | CUSTOMER DEPOSIT | 1341.50 |
| 6-04 | 1111111 | CUSTOMER DEPOSIT | 6600.00 |
| 6-04 | 21 | Paid UCF DR sys-gen UNCOLLECTED FUNDS | 65.90- |
| 6-06 | 1111111 | CUSTOMER DEPOSIT | 1346.80 |
| 6-06 | 1111111 | CUSTOMER DEPOSIT | 150.00 |
| 6-06 | 25 | Paid UCF DR sys-gen UNCOLLECTED FUNDS | 65.90- |
| 6-09 | 1111111 | CUSTOMER DEPOSIT | 462.59 |
| 6-09 | 23 | Paid UCF DR sys-gen UNCOLLECTED FUNDS | 32.95- |
| 6-10 | 987 | TF FROM 4656 PER CUST REQUEST EWELCH | 5000.00 |
| 6-10 | 25 | Pd NSF/OD dr sys-gen INSUFFICIENT | 131.80- |



NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

NNN        DI        011572 P

# mb financial
bank N.A.

www.mbfinancial.com

Account # 00400004011

**MAIL STATEMENT**

Image Statement

## CHIPLEASE INC

| Date | Ref | Description | Amount |
|------|------|-------------|--------|
| 6-11 | 1111111 | CUSTOMER DEPOSIT | 5000.00 |
| 6-12 | 1111111 | CUSTOMER DEPOSIT | 13665.55 |
| 6-13 | 32 | Paid UCF DR sys-gen UNCOLLECTED FUNDS | 98.85- |
| 6-16 | 1111111 | CUSTOMER DEPOSIT | 6600.00 |
| 6-16 | 25 | Paid UCF DR sys-gen UNCOLLECTED FUNDS | 65.90- |
| 6-18 | 1111111 | CUSTOMER DEPOSIT | 1341.50 |
| 6-18 | 25 | Paid UCF DR sys-gen UNCOLLECTED FUNDS | 32.95- |
| 6-19 | 1111111 | CUSTOMER DEPOSIT | 14600.00 |
| 6-20 | 1111111 | CUSTOMER DEPOSIT | 23000.00 |
| 6-20 | 23 | Paid UCF DR sys-gen UNCOLLECTED FUNDS | 98.85- |
| 6-24 | 7 | CHARGEBACK ITEM | 8000.00- |
| 6-24 | 99600 | Chargeback | 4.50- |
| 6-25 | 1111111 | CUSTOMER DEPOSIT | 4936.35 |
| 6-27 | 1111111 | CUSTOMER DEPOSIT | 86046.51 |
| 6-30 | 1111111 | CUSTOMER DEPOSIT | 458.29 |

```
*- - - - - - - - - -DAILY BALANCE SUMMARY- - - - - - - - - - -*
```

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 5-31 | 458.78- | 6-02 | 11408.27 | 6-03 | 6849.77 |
| 6-04 | 2483.87 | 6-05 | 843.87 | 6-06 | 24.77 |
| 6-09 | 1758.78- | 6-10 | 3109.42 | 6-11 | 2277.18 |
| 6-12 | 9301.30 | 6-13 | 2912.45 | 6-16 | 9446.55 |
| 6-17 | 8377.32 | 6-18 | 5605.87 | 6-19 | 3567.41 |
| 6-20 | 11786.20 | 6-23 | 9574.73 | 6-24 | 1570.23 |
| 6-25 | 5406.58 | 6-27 | 90453.09 | 6-30 | 81811.38 |



MB. MY BANK.
1.888.I BANK MB (1.888.422.6562)

011573 P

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In Re:** | ) | **Case no. 08cv4040** |
| | ) | **(consolidated)** |
| **RESOURCE TECHNOLOGY** | ) | **Hon. Matthew F. Kennelly** |
| **CORPORATION,** | ) | |
| | ) | |
| **Debtor.** | ) | |

**AFFIDAVIT OF LEON GREENBLATT**

Leon Greenblatt, being first duly sworn, deposes and states as follows:

1.    I am an individual over the age of 18 and state the facts as they are known to me first-hand.

2.    I am the sole director and officer of Chiplease, Inc. ("Chiplease").

3.    Chiplease serves as a cash management system for other entities and regularly deposits, holds and transfers funds of entities other than Chiplease. In addition, Chiplease's own limited assets are largely illiquid, and there is no ready market for them.

4.    I have access to Chiplease's checking account. The checking account is located at MB Financial and bears account no. 5040004311.

5.    I have reviewed Exhibit A to Chiplease's response in opposition to the Chapter 7 trustee's allegations of contempt. Exhibit A is a true and correct copy of statements for

Chiplease's checking account for the months of June and July 2008.


**FURTHER AFFIANT SAYETH NOT.**

LEON GREENBLATT

SUBSCRIBED AND SWORN TO
BEFORE ME THIS *19* DAY OF AUGUST, 2008

Notary Public

"OFFICIAL SEAL"
KEVIN M. WERNER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8/8/2010

2