# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| RESOURCE TECHNOLOGY CORP., ) | |
| ) | |
| Debtor. ) | |
| -------------------------------------------------- ) | Case No. 08 C 4040 |
| ) | |
| Appeal of Chiplease, Inc., ) | |
| ) | |
| Appellant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Chiplease, Inc. appeals from an order of the bankruptcy court directing it to deposit $500,000 plus $47,367.37 in accrued interest into an account at the law firm of Arnstein & Lehr, which represents the Chapter 7 bankruptcy trustee of Resource Technology Corp. For the reasons stated below, the Court affirms bankruptcy court's order except to the extent it requires a deposit of interest.

## Facts

On March 14, 2006, the bankruptcy court entered an order approving a settlement between the bankruptcy estate and Leon Greenblatt, Chiplease, and other related entities. Paragraph 23 of the order stated, in relevant part, as follows:

> 23. As more fully set forth in Paragraph 11 of the Settlement Agreement: (i) the Purchaser shall deposit the sum of $500,000.00 to be held in escrow by its counsel, Dykema Gossett PLLC, for the payment of all unpaid Chapter 7 operating expenses above $150,000.00 and any expenses incurred while the Estate continues to operate the Debtor's business[.]

Order of Mar. 16, 2006 ¶ 23. The Dykema Gossett firm was Chiplease's legal counsel

at the time.  Paragraph 11 of the settlement agreement provided, in relevant part, as follows:

> 11. **Consideration.**  Chiplease for itself and on behalf of the other Banco Secured Lenders shall pay to the Estate the following consideration:
>
> (i)  Chiplease shall pay all unpaid Chapter 7 operating expenses above $150,000 and any expenses incurred while the Estate continues to operate the Debtor's business ("Expenses").  The Estate shall pay the first $150,000 of these expenses. On or before the Closing Date, Chiplease shall deliver to its counsel, Dykema Gossett PLLC the sum of $500,000.00 to be used to pay the Expenses ("Adequate Security").  After the Estate has paid a total of $150,000 in Chapter 7 Expenses, Chiplease will be requested to pay all additional Chapter 7 operating expenses.  The Chapter 7 Trustee shall advise Chiplease in writing of Chiplease's obligation to pay one or more Expenses (the "Expense Request").  Chiplease shall have seven (7) days from receipt of the Expense Request to either pay the Estate sufficient funds to fully satisfy the Expense Request, or to dispute the payment of the Requested Expenses in writing ("Expense Dispute").  If Chiplease fails to make a timely Expense Dispute, the Expense Request will be deemed allowed and Chiplease will be required to pay it.  If an Expense Dispute is timely made, the Estate shall have ten (10) days from the receipt of the Expense Dispute to seek to have the Expense Request allowed or disallowed by the Court (the "Expense Motion").  In the event that the Estate does not file an Expense Motion within the ten (10) day period, Chiplease shall be granted standing for the limited purpose of seeking to have the Expense Request disallowed;
>
>     (a)  The term "Chapter 7 operating expenses" shall not include the Chapter 7 Loan or any Chapter 7 Trustee's fees or expenses or any professional fees and expenses, which the Estate shall pay from the Estate's assets including but not limited to the consideration below including the 506(c) Funds[.]

*Id.*, Ex. A ¶ 11.

On April 17, 2008, two administrative claimants filed a motion asking the bankruptcy court to direct Chiplease to post a $5 million letter of credit as security for as-yet-unpaid administrative expenses.  The claimants contended that in the settlement

2

the court had approved in March 2006, Chiplease undertook to pay Chapter 7 operating expenses above $150,000, and they argued that Chiplease had attempted to evade this obligation in various ways. On May 13, 2008, the bankruptcy court ordered the filing of responses to the motion by June 3 and replies by June 10. See Bankr. Ct. Dkt. No. 4280.

Both Chiplease and the Chapter 7 trustee filed timely responses to the claimants' motion. The trustee's response focused on Chiplease's undertaking in the settlement to "deposit the sum of $500,000.00 to be held in escrow by its counsel, Dykema Gossett PLLC, for the payment of all unpaid Chapter 7 operating expenses above $150,000.00 . . . ." The trustee stated that Chiplease's then-counsel, Gregory Jordan, had earlier advised the trustee's counsel that the escrow had been established. The trustee stated that in May 2008, after Jordan and his firm were granted leave to withdraw as Chiplease's counsel, the trustee asked Jordan to account for the funds received into the escrow and to transfer the escrow to Chiplease's new counsel. Jordan, according to the trustee, directed the trustee's questions to new counsel, who reported that he had no information about the escrow. As a result, the trustee spoke again to Jordan, who claimed that he had never told the trustee's counsel that an escrow had been established. The trustee reported that he had advised Chiplease and its new counsel of the apparent noncompliance with the settlement order and was told in response that "Chiplease had paid claims in excess of $500,000.00 [and that] Chiplease apparently takes the position that those expenditures offset the amount which should have been in the escrow." Trustee Resp. ¶ 14. The trustee reported that he had obtained a list of the payments that Chiplease was contending should be offset;

3

many of them, the trustee said, actually predated the March 2006 settlement approval or were expenses incurred after the debtor's business operations were terminated – in other words, they were not "operating expenses." The trustee argued that Chiplease had improperly taken it upon itself, contrary to the settlement agreement's terms, to determine what expenses would be paid. As a result, the trustee argued, the bankruptcy court should order Chiplease to establish the escrow it had previously been ordered to set up "and to deposit whatever additional security this Court determines is proper." *Id.* ¶ 19.

Chiplease's response, filed the same day as the trustee's response, makes it clear that Chiplease was aware that its compliance with the settlement agreement and approval order was at issue. It did not confine its response to the claimants' motion but also addressed the trustee's contention that it had failed to comply with the terms of the settlement agreement and approval order. Chiplease argued that the administrative claimants' request for posting of security amounted to a collateral attack on the order approving the settlement. Chiplease stated that the settlement did not require it to post security for all administrative claims but rather

> required Chiplease to deliver, on or before closing, $500,000 to its counsel for use in paying expenses, referred to as "Adequate Security." Then, after this estate had paid a total of $150,000.00 of "operating expenses," Chiplease would be asked to pay operating expenses, or dispute the same, pursuant to additional procedures outlined in the Settlement Agreement.

Chiplease Resp. ¶ 8. Chiplease went on to "acknowledge[ ] that it did not deposit with Dykema Gossett on or before the closing date the $500,000.00 of 'adequate security'"; it stated that "[i]f anyone has the right to enforce the Settlement it is the Trustee who . . .

4

was a party to the Settlement." *Id.* ¶ 9 & n.1. Chiplease claimed, however, that it had paid over $1,000,000 in Chapter 7 operating expenses, at least $500,000 with money it had deposited into a Dykema Gossett client trust account (on dates it did not specify). It described in detail one of those claimed expenses – insurance premium payments of $40,000. Chiplease attached to its response a spreadsheet listing the expenses it had paid that it contended should be considered. It also stated that "[t]he Trustee was aware of Chiplease's payment of certain payroll expenses by virtue of his being copied on a letter dated May 17, 2006 from Chiplease's counsel," a copy of which it attached to its response. *Id.* ¶ 13 & Ex. E. Aside from those particular payments, Chiplease did not contend the trustee had approved or was aware of any of the expense payments at issue. Chiplease argued that the court should not overturn the settlement order or otherwise modify the settlement. It did not request an evidentiary hearing.

In reply, the administrative claimants argued that Chiplease's response made it clear that it had adopted a "cavalier, play-by-its-own-rules attitude towards its obligations" under the settlement approval order, Claimants' Reply at 2; that by not depositing the $500,000 Chiplease had already violated the order, which suggested it might do so again; and that this provided an additional ground for the relief the claimants sought.

At a hearing on June 17, 2008, the bankruptcy court addressed various matters, including the administrative claimants' motion. In addressing that motion, the Court identified three possible outcomes: order no security to be posted; order the $5 million the claimants requested; or require posting of the $500,000 originally ordered. June 17, 2008 Tr. at 9-10. The Court stated that "the most reasonable" of these courses was

5

"the middle one":

> [T]he settlement required what was referred to as security for the payment by Chiplease of administrative claims in the Chapter 7 phase of this case. And the order directing approval of the settlement provides that these funds are to be held in escrow by Chiplease's counsel for the payment of all unpaid Chapter 7 operating expenses.
>
> In order to be held in escrow for the payment of all unpaid Chapter 7 operating expenses, that sum would have to be held in escrow until all applications for payment of administrative expenses had been received.
>
> So reading the order approving the settlement together with the settlement itself, which refers to this $500,000 deposit as quote, adequate security, close quote, I think the intent is plain that the $500,000 is supposed to be held in escrow until the conclusion of the case in Chapter 7 to assure that payment is actually made by Chiplease.
>
> It appears that that provision of this order has not been complied with. An order and compliance consistent with the terms of the order would be appropriate.
>
> On the other hand, ordering a payment of $5 million would be something that goes well beyond the terms of the order. And I frankly don't see any basis for me to create an obligation that the parties did not negotiate and consent to at the time that the order was entered.
>
> And then, finally, to do nothing would be to countenance what would appear to be a breach of the agreement and a violation of the court's order, which required that the escrow be established.
>
> Now, if anything thinks that that analysis is incorrect, I'll be happy to hear from you.

*Id.* at 10-11.

Following the court's invitation for adverse comment, counsel for the claimants argued certain points, as did an attorney for another claimant; no one else (including Chiplease's counsel) did so. *See id.* at 11-19. The court indicated that it was contemplating ordering interest on the $500,000 "that would have been earned from the time that it should have been deposited to now," to "put the counter-parties to Chiplease

in the position they would have been in had the contract been complied with." *Id.* at 15. Counsel for Chiplease made brief comments in response to that particular point – suggesting that the parties "check with [the] Dykema [firm] and see how they held the money," *id.* at 18 – but he made no comments regarding the court's stated determination to order deposit of $500,000. The trustee asked that the order require the escrow to be placed with Arnstein & Lehr, counsel for the trustee, and the court agreed, asking the parties to draft an order "to follow for June 25." *Id.* at 19.

In short, on June 17, the court ruled on the administrative claimants' motion and asked counsel to draft an order, to be entered on June 25. The court was not asked to permit, and it did not authorize, further submissions on the merits.

Despite this, on June 24, the day before the hearing at which the court contemplated entering its order, Chiplease filed – without leave of court, without explanation, and without noticing it for presentment – an affidavit of John Connolly, president of Resource Technology Corp., the debtor. Connolly stated that at a meeting in March 2006, he and the trustee agreed on a list of expenses to cover the estate's obligation to pay the first $150,000 of Chapter 7 operating expenses. He also stated, without corroboration or support, that "[b]ased on my conversations with [the trustee], I understood that I had the authority to review and approve additional Chapter 7 operating expenses" and to forward them to Chiplease's attorney Jordan for payment. Connolly Affid. ¶ 6. Connolly also stated that he had communicated with the trustee or the trustee's accountant regarding additional Chapter 7 operating expenses, attaching copies of some e-mails and identifying some specifics.

Chiplease did not file a motion for reconsideration of the bankruptcy court's June

7

18 ruling. And when the parties appeared before the bankruptcy court on June 25, Chiplease's counsel made no mention of the filing of the Connolly affidavit and did not orally request reconsideration. Rather, counsel addressed only the issue of interest, stating that the company's prior counsel had suggested that the firm's client trust account might not have been an interest-bearing account. The judge stated that a person who holds money for the benefit of another has a common law fiduciary duty to put it in an interest bearing account. June 25, 2008 Tr. at 3-4. The order the judge signed on June 25 denied the claimants' motion for additional security "except as provided for herein" and directed Chiplease to deliver to the Chapter 7 trustee, by no later than July 17, 2008, $547,367.47, "representing the original escrow amount of $500,000, plus $47,367.47 in compounded interest." Order of June 25, 2008 ¶ 2.

Chiplease has appealed, challenging both the requirement to deposit $500,000 and the inclusion of interest. It argues that it complied with the settlement agreement by paying $500,000 in expenses; the $500,000 was not intended as a "security deposit"; the bankruptcy court erred in requiring Chiplease to pay interest on the $500,000; the court erred in requiring funds to be deposited with the trustee's counsel; and the court should have held an evidentiary hearing.

## Discussion

**1.     The Connolly affidavit**

The Connolly affidavit is not properly part of the Court's determination of the merits of the appeal. Chiplease submitted the affidavit after the bankruptcy court had already announced its ruling, subject only to preparation of a draft order and perhaps

8

further discussion about the matter of interest. It took no steps to bring the affidavit to the court's attention: it did not move for reconsideration, and its counsel made no mention of the affidavit when, the day after filing it, counsel appeared in court for entry of an order on the administrative claimants' motion.

In oral argument before this Court, Chiplease's counsel claimed they were prevented from saying anything at either of the hearings before the bankruptcy court. The record does not support this contention. At the June 25 hearing, Chiplease's counsel made oral comments; she said nothing, however, about the Connolly affidavit or the issues it purportedly presented. At the initial hearing on June 17, Chiplease's counsel likewise made comments on the record but limited those comments to the issue of interest. There is nothing in the record suggesting that Chiplease's counsel wanted to say something on that date but was prevented from doing so. And if something like that happened – the Court acknowledges such things do sometimes occur – Chiplease was obligated to ask to be heard, file a motion for reconsideration, or bring the points it wanted to address the bankruptcy court's attention by other means. Slipping a belated affidavit into the record, without bringing it to the court's attention, does not suffice. *See, e.g., Chan v. Wodnicki*, 123 F.3d 1005, 1007 n.2 (7th Cir. 1997) (failure to bring issue to trial court's objection forfeits issue for appeal); *United States v. Davis*, 15 F.3d 1393, 1406-07 (7th Cir. 1994) (timely objections permit trial courts to rectify problems). For these reasons, Chiplease may not rely on the Connolly affidavit on appeal.[1]

---

[1] Even were Chiplease permitted to rely on the Connolly affidavit, it would not
(continued...)

## 2. Noncompliance with the March 2006 order and the absence of an evidentiary hearing

The relevant terms of the bankruptcy court's March 2006 settlement approval order, which expressly incorporated Paragraph 11 of the settlement agreement (which the court attached to the order), were clear and unambiguous. Chiplease was required to deposit $500,000 in an "escrow"; it was required to do this prior to the closing date; and disbursements from the escrow for Chapter 7 operating expenses were to be made according to, and only according to, a procedure set forth in the settlement agreement. The order hardly could have been clearer.

In its response to the administrative claimants' motion, Chiplease *admitted*, expressly or tacitly, that it had not met any of these requirements. First, it expressly admitted it had not deposited $500,000 with Dykema Gossett prior to the closing date. Second, it tacitly admitted that whatever funds it had belatedly put into Dykema Gossett's client trust account had not been handled as an "escrow." Third, Chiplease tacitly or expressly admitted that it had not followed the procedure for disbursements that the settlement agreement, as incorporated into the court's order, specifically required.

Under the circumstances, the bankruptcy court was not required to hold an evidentiary hearing, and it did not abuse its discretion in directing Chiplease to comply

---

[1](...continued)
affect the outcome of this appeal. Connolly said nothing about Chiplease's admitted failure to deposit $500,000 with its counsel prior to the settlement closing date; its failure to treat funds deposited with its counsel as an escrow; or justifying its failure to comply with the operating expense payment procedure set down by the bankruptcy court when it incorporated into its settlement approval order the terms of Paragraph 11 of the settlement agreement.

with the March 2008 order by depositing $500,000 in escrow. Chiplease conceded its violation of the order and the incorporated provisions of the settlement agreement. Its argument was that it had paid all sorts of administrative expenses, this met the intent of the settlement, and thus, "no harm, no foul." But the bankruptcy court was not required to accept that argument; it was entitled to expect, and to enforce, compliance with its order as entered. *See, e.g., Easley v. Kirmsee*, 382 F.3d 693, 699 (7th Cir. 2004) (courts are entitled to expect compliance with their orders). Nor was it required to conduct an evidentiary hearing to delve into the particulars of a "defense" that it was not required to consider.

Chiplease's implicit contention that it was entitled to disburse the $500,000 as it wished flies in the face of the March 2006 order's express term establishing an escrow. The term "escrow" has a commonly understood meaning. As the Seventh Circuit has stated,

> [a]n escrow is defined as:
>
> A legal document (such as a deed), money, stock, or other property delivered by the grantor, promisor or obligor into the hands of a third person, to be held by the latter until the happening of a contingency or performance of a condition, and then by him delivered to the grantee, promisee or obligee.

*FDIC v. Knostman*, 966 F.2d 1133, 1140 (7th Cir. 1992) (quoting Black's Law Dictionary 545 (6th ed. 1990)); *see also, e.g., Hoornstra v. United States*, 969 F.2d 530, 533 (7th Cir. 1992). When the bankruptcy court ordered, in March 2006, that Chiplease was to deposit $500,000 "to be held in escrow" for the payment of certain unpaid Chapter 7 operating expenses and expenses incurred while the estate continued to operate the debtor's business, "[a]s more fully set forth in Paragraph 11 of the Settlement

11

Agreement," it meant that the money was to be disbursed only upon satisfaction of the conditions set forth in Paragraph 11. Again, the order was not in the least bit unclear in this regard.

There was nothing in Chiplease's response to the administrative claimants' motion that suggested that the Paragraph 11's prerequisites to payment of expenses from the escrow had been met. In fact, the response reflected exactly the opposite. There was no basis for Chiplease to believe that the bankruptcy court would consider payments that Chiplease made on its own, and/or without complying with the Paragraph 11 procedure, as compliant with its order.

Because the order's incorporated conditions for payment of expenses were never satisfied, Chiplease's payment of some expenses did not relieve it from establishment of the escrow and did not amount to substantial compliance with the order (or noncompliance the court was required to forgive). In its response to the administrative claimants' motion, Chiplease did not suggest that any of what it had paid consisted of Chapter 7 operating expense payments it had been "requested to pay," as contemplated in Paragraph 11(i) of the settlement agreement. Rather, it said only that one of the payments – insurance premiums – amounted to a significant Chapter 7 operating expense and that the trustee had been "aware of" Chiplease's payment of certain other expenses – "certain payroll expenses" – via being copied on a letter that attorney Jordan sent to Connolly. *See* Chiplease Resp., Ex. E. (Nor did the Connolly affidavit reflect compliance with Paragraph 11(i). Connolly said he "understood" from the trustee that he had the authority to approve expenses on his own, but that was not the protocol the court had adopted via its March 2006 order. Connolly did not provide,

or claim to prove, evidence that he had obtained approval for or even communicated with the trustee regarding *all* the expenses claimed to add up to $500,000.[2])

3. **The "security deposit" issue**

As noted earlier, Chiplease argues that the bankruptcy court erroneously considered the $500,000 to be a "security deposit." This appears to be an attack on the court's statement, in its comments at the June 18 hearing, that the $500,000 was intended to remain on deposit until all of Chiplease's expense obligations had been satisfied. This argument is not ripe for determination in this appeal. First of all, as the Court has made clear, Chiplease is not entitled to an offset against the $500,000 for the payments that the record reflects it made without complying with the procedure set down by the bankruptcy court. As far as any future disbursements are concerned, Chiplease still has not complied with the bankruptcy court's order that it deposit $500,000 (this Court stayed the bankruptcy court's order only to the extent it required the deposit of interest on the $500,000). Thus any question of whether, when, and how that $500,000 will be used is an issue for another day.

4. **Interest**

The Court agrees with Chiplease that the bankruptcy court abused its discretion, and thus erred, in assessing interest on the $500,000. The bankruptcy court was incorrect when it stated that the addition of interest "put the counter-parties to Chiplease

---

[2] The Court also notes that, as the trustee argued to the bankruptcy court and at oral argument before this Court, a number of the expenses claimed to add up to $500,000 were paid before March 2006 or were incurred after the trustee terminated the debtor's business operations, and thus would not have qualified under Paragraph 11(i) of the settlement agreement.

13

in the position they would have been in had the contract been complied with." June 18, 2008 Tr. at 18. Neither the settlement agreement nor the court order required or contemplated that the escrow would bear interest. The agreement itself did not use the term "escrow"; rather, it simply stated that Chiplease would deliver $500,000 to the Dykema firm before closing and that this would be used, subject to the procedure set forth, to pay Chapter 7 operating expenses. *See* Mar. 16, 2006 Order, Ex. A ¶ 11(i). The agreement also contained an integration clause stating that it constituted the parties' entire agreement, *id.* ¶ 17, as well as a provision stating it could be amended only in writing. *Id.* ¶ 16. The court's March 2006 approval order, which is where the term "escrow" is used, said nothing about interest. There is nothing in the record reflecting that any party requested, or that the court contemplated at the time of the order (let alone communicated to Chiplease), that the money was to be held in an interest-bearing account. Because the court indicated that it was simply requiring compliance with the terms of the settlement agreement and its order, it erred in imposing interest, which was a new, previously uncontemplated obligation.

5. **Deposit with Arnstein firm**

The bankruptcy court did not, however, abuse its discretion when it directed, in the order under appeal, that the $500,000 be deposited with the trustee's counsel rather than with Chiplease's counsel. In view of Chiplease's admitted noncompliance with the March 2006 order, the court was not required to trust Chiplease or its substitute counsel to carry out the court's directives.

**Conclusion**

For the reasons stated below, the Court directs the Clerk to enter judgment stating as follows: The June 25, 2008 order of the bankruptcy court is affirmed, except to the extent that it required Chiplease, Inc. to deposit $46,367.47 in interest.

On a separate note, the Court acknowledges that the trustee's motion for rule to show cause is still pending and will proceed under the docket number of this case. That matter, however, is collateral to the merits of Chiplease's appeal from the bankruptcy court's June 25, 2008 order. The Court thus regards the present judgment as final and appealable, as it disposes of the entirety of the matter that was appealed from the bankruptcy court.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 1, 2008